UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,

      vs.

MIKAELA HALL,

              Defendant.

_____/

No. 1:22-cr-00142-SJB

HON. SALLY J. BERENS
United States Magistrate Judge

## <u>UNITED STATES' SENTENCING MEMORANDUM</u>

Defendant Mikaela Hall comes before this Court having pled guilty to one count of conspiracy to introduce misbranded drugs into interstate commerce, in violation of 18 U.S.C. § 371, 21 U.S.C.§§ 331(a), 353(b)(1), and 333(a)(1). Hall also pled guilty to five counts of introduction of misbranded drugs into interstate commerce, in violation of 21 U.S.C.§§ 331(a), 353(b)(1), and 333(a)(1). Hall and her boyfriend, Taylor McLaughlin, participated in an extensive scheme to import unapproved, misbranded prescription drugs into the United States and then to distribute those drugs to customers who purchased them on a website – www.ExpressPCT.com.

During the pendency of the conspiracy, Hall and McLaughlin first began receiving international packages containing bulk quantities of prescription drugs. Later, their role changed, and they received domestic packages of prescription drugs from co-conspirators throughout the United States. Then, following instructions from Brendon Gagne and others, they broke down the packages and fulfilled client orders

1

that had been made on the site. Hall did this despite the fact that the customers who purchased the drugs never presented a valid prescription nor were the drugs approved for distribution in the United States.

## I. Background

In July 2020, investigators discovered two websites – www.ExpressPCT.com ("ExpressPCT") and www.ExpressPEDS.ws ("ExpressPEDS") – that sold unapproved, foreign manufactured prescription drugs as well as anabolic steroids and some Schedule III and Schedule IV controlled substances in the United States without requiring a prescription. The owners of the websites marketed their products largely to individuals in the bodybuilding community who used performance enhancing drugs ("PEDS") and then needed post-cycle therapy drugs ("PCT") to address the side effects of steroid use.

In order to obtain the drugs for sale on ExpressPCT legally, a person in the United States must have a valid, written prescription from a doctor or other licensed medical practitioner. (R.15: PSR, PageID.95.) However, ExpressPCT did not require its customers to provide a prescription to purchase any of the drugs on the site. (*Id.*)

Laboratories overseas manufactured the drugs sold on both ExpressPCT and ExpressPEDS. At no time did those laboratories seek the approval of the Food and Drug Administration ("FDA") to distribute the drugs in the United States. Instead, various individuals both in the United States and abroad arranged for the drugs to be concealed in packages and shipped in bulk to the United States to domestic "re-distributors." The packages did not declare their illicit contents and instead took steps to conceal their true nature. For example, conspirators frequently concealed the

drugs inside cosmetic boxes and declared on customs forms that the drugs were, instead, "cosmetics" or "gifts." (*Id.*) The following photograph shows packaging for the misbranded drugs. Investigators recovered these items from the trash outside of Hall and McLaughlin's house in Muskegon, Michigan.



Cosmetics boxes

Once the packages arrived in the United States, the re-distributors repackaged the bulk orders into US Postal Service shipping boxes, relabeled the boxes with new labels, showing a US-based return address, and shipped them to second tier US-based distributors who then finally shipped the drugs to the customers. Conspirators designed the labels and packaging to make the purchasers think their drugs came from the United States and not from overseas. (*Id.* at PageID.96.)

McLaughlin joined the scheme in February 2020 after being recruited by fellow bodybuilder, Taylor McLaren, via Instagram. (*Id.* at PageID.104.) McLaughlin agreed

to receive international packages containing unapproved, misbranded prescription drugs and reship them. McLaughlin subsequently recruited Hall to help with redistribution process since she was staying at home with their young child. (*Id.* at PageID.105.) Hall agreed to assist in mailing packages as part of the scheme. The couple then set up a cryptocurrency account with Coinbase in order to receive Bitcoin payments for their participation in the scheme and also established accounts with Wickr and encrypted email accounts to communicate with co-conspirators.

Hall and McLaughlin received numerous emails from co-conspirators with instructions for how to mail packages. Many of those emails were sent to the couple by co-conspirator Brendon Gagne. For example, "[o]ne of Mr. Gagne's first communications to Mr. McLaughlin and Ms. Hall included an introductory email related to the risks of distributing foreign unapproved drugs within the United States. Mr. Gagne expressed the importance of Mr. McLaughlin and Ms. Hall distancing themselves from the parcels by using USPS collection boxes and real return addresses of unrelated people or businesses rather than using their personal address." (*Id.* at PageID.107.) In July 2020, the couple received another email from Gagne with instructions for breaking down boxes of bulk drugs. In it, Gagne expressly stated "it is not fully legal shipping these types of products all across the country." (*Id.* at PageID.108.)

Hall ultimately took over the day to day operations while McLaughlin was at work. For example, on September 29, 2020, investigators conducting surveillance on McLaughlin and Hall's residence saw the couple leave the house and drop McLaughlin off at his job. Hall then drove to a nearby Walgreens, parked directly in

4

front of the USPS box, and walked up to the box with a full Meijer reusable shopping bag.  After Hall left, without going into the store, investigators checked the USPS box and found six small USPS flat rate boxes all with the same return address (which was not McLaughlin and Hall's residence) and all addressed to different people in New Hampshire, California, New Jersey, and Michigan, among others. Investigators interviewed the Michigan recipient, who gave them consent to open the package – it contained prescription drugs manufactured in India that the recipient had purchased on www.ExpressPCT.com.  (*Id*. at PageID.99.)





McLaughlin and Hall received 12 international packages containing prescription drugs. They then re-labeled these packages and sent them to other co-conspirators throughout the United States. After doing that for several months, McLaughlin and Hall then transitioned to another role in the scheme – receiving domestic shipments from co-conspirators and using those drugs to fulfill customer orders. In this role, McLaughlin and Hall received multiple re-labeled packages from co-conspirators in the United States, including from Ross Lucien and Joshua Ford. Ultimately, McLaughlin and Hall fulfilled approximately 430 customer orders between July and October 2020. (R.15: PSR, PageID.134.) Those shipments included the prescription drugs that served as the bases of Counts 2-6 of the Information to which Hall pled guilty.

McLaughlin and Hall's actions led to investigators executing a search warrant at their home in December 2020. During the warrant, investigators found drugs related to the scheme. At that time, they also interviewed McLaughlin and Hall about the conspiracy. They both answered investigators' questions, explaining how McLaren had recruited McLaughlin on Instagram and then had introduced them to "Aria" – an individual later identified as co-conspirator Gagne. (*Id.* at PageID.107.)

The above facts led to Hall being charged by Information and then pleading guilty to one count of conspiracy to introduce misbranded drugs into interstate commerce and five counts of introduction of misbranded drugs into interstate commerce. She now comes before the Court for sentencing. For the reasons outlined herein, the United States recommends that the Court impose a sentence within the calculated Guideline range.

## II.     United States Sentencing Guidelines

The first step in the sentencing process is to calculate the advisory Guideline range applicable to the offense of conviction. Here, the parties agree with the Guideline calculations contained in the PSR. (R.15: PSR, PageID.136-137.) Hall's base offense level is properly calculated to be six, which is then increased by four additional points for the loss attributable to her participation in the scheme – here, $31,399.14. (*Id.* at PageID.136.) The resulting offense level of ten is then properly decreased by two levels based on Hall's acceptance of responsibility, resulting in a total offense level of eight. (*Id.* at PageID.137.) Hall does not have a criminal history. Her advisory Guideline range, then, is between zero and six months. (*Id.* at PageID.146.)

7

### III.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In addition to calculating the advisory Guideline range in this case, the Court must consider the sentencing factors under 18 U.S.C. § 3553(a). *United States v. Hall*, 632 F.3d 331, 335 (6th Cir. 2011) (citing *United States v. Alexander*, 543 F.3d 819, 822 (6th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007))). Specifically, the Court must endeavor to impose a sentence that is "sufficient but not greater than necessary" to achieve the statutory goals outlined by Congress. *See* 18 U.S.C. § 3553(a). In imposing a sentence, the Court should look to certain statutory factors, including, but not limited to, the nature and circumstances of the offense and the history and characteristics of the defendant; and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant. *Id*.

Here, Hall's crime was serious. While she was not the person initially recruited to participate in the scheme, she ultimately handled almost all of the reshipping work on behalf of her and McLaughlin. Her participation in the scheme persisted for nearly a year. During that time, she and McLaughlin received approximately a dozen international packages and also sent out hundreds of packages to customers. The type of drugs she and other co-conspirators distributed included Schedule III and Schedule IV controlled substances as well drugs that are so dangerous that the FDA has issued a black box warning for them – FDA's most stringent warning that is used by the agency "to notify the public of serious, permanent, and fatal side effects associated with the drug." (R.15: PSR, PageID.95.)

8

Additionally, in participating in the scheme, conspirators ran a serious risk that the drugs could be adulterated or somehow altered. They risked their customers administering the drugs in such a way that could cause serious health problems if not worse. And they did so largely to support a segment of the population – bodybuilders – who needed the drugs to counteract the side effects of steroid use, which has its own inherent dangers.

That said, it is notable that Hall has no previous criminal history. She confessed her role in the scheme immediately when confronted by investigators and was forthcoming in answering questions. She and McLaughlin both voluntarily forfeited the Bitcoin they earned from the scheme. Since 2020, Hall has continued to take responsibility for her actions and has taken affirmative steps to ensure this conduct will not be repeated. These facts indicate someone who is trying to rehabilitate herself, which lessens the need to protect the public and impose a sentence aimed at specific deterrence here.

Nevertheless, general deterrence is an important consideration here. Hall's actions here were not isolated. Others in the country continue to perpetrate similar schemes in order to obtain cheap drugs without a prescription. In fashioning a sentence in this case, the Court should consider the need to deter these and other like-minded individuals from continuing to perpetrate dangerous schemes involving potentially harmful drugs.

## IV.    Conclusion

Overall, in fashioning a sentence that is sufficient but not greater than necessary here, the Court should consider the full nature of Hall's crimes, her background, and the amount of drugs the conspirators trafficked.

Respectfully submitted,

MARK A. TOTTEN
United States Attorney

Date: March 20, 2023

*/s/ Stephanie M. Carowan*
STEPHANIE M. CAROWAN
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501
(616) 456-2404